## SETTLEMENT AGREEMENT

**IN CONSIDERATION** of the agreements set forth below, and in order to avoid further time, expense and effort associated with any and all litigation or other proceedings between Federico Ramirez (hereinafter sometimes referred to as "Ramirez"), a resident of the State of Florida, and Mar-A-Lago Club, L.L.C (hereinafter referred to as "Mar-A-Lago" or "Defendant") (Ramirez and Defendant are collectively referred to as the "Parties") enter into this Settlement Agreement and Final Release (the "Agreement") and agree as follows:

1.  Background and Intent of the Parties:

    A. Ramirez was formerly employed by Mar-A-Lago. The Parties desire to settle fully and finally all differences between them, including, but in no way limited to, those disputes that are the subject of the Lawsuit (defined below), as well as any other claims, whether known or unknown, suspected or not suspected, or accrued or not yet accrued, that have been made or could have been made by or on behalf of Ramirez against Mar-A-Lago relating to conduct or events occurring at any time prior to and including the date on which this Agreement is executed, including without limitation, those claims that could have been asserted in any way arising out of Ramirez's employment or the end of his employment with Defendant;

    B. **Opportunity to Negotiate, Consider and Consult with Counsel:** The terms of this Agreement are the product of negotiations between the Parties, and the Parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed. In executing this Agreement, Plaintiff has not relied on any representation, compromise, conduct or action made by and/or on behalf of Defendant or Defendant's attorneys. Plaintiff acknowledges that Plaintiff has obtained the advice of counsel and agree that Plaintiff has been given a reasonable period of time within which to consider this Agreement. Plaintiff and Defendant confirm that they had this Agreement explained to them by their attorneys; they are relying on their own judgment and on the advice of their respective attorneys, and each confirms their competence to understand and do hereby accept the terms and conditions of this Agreement.

    C. **The Parties acknowledge and agree that this is a fair and reasonable settlement of Plaintiff's claims,** for among other reasons, the following:

    (i) Ramirez filed an action in the United States District Court for the Southern District of Florida, entitled or captioned *Federico Ramirez v. Mar-A-Lago Club, L.L.C.*, Civil Action Number 09-82380-CV-Dimitrouleas/Snow (hereinafter referred to as the "Lawsuit"), in which he

1

alleges he was not paid overtime compensation and for other relief under the Fair Labor Standards Act ("FLSA").

(ii) Defendant denied all material allegations of wrongful conduct contained therein and further denies that Ramirez is entitled to any relief whatsoever. Specifically, Defendant maintains that Plaintiff qualifies for the administrative exemption and that he is not entitled to any overtime whatsoever.

(iii) Assuming arguendo, for settlement purposes only, that Plaintiff was found to be a non-exempt employee, Defendant reviewed Plaintiff's potential overtime claim. Defendants contend that Plaintiff was paid a salary with the understanding between Plaintiff and Defendant being that the salary was compensation for all hours worked within a work week. Therefore, if Plaintiff was found to be a non-exempt employee, Plaintiff would be entitled to only his half-time rate of pay for any overtime hours. Defendant reviewed the number of weeks and hours Plaintiff could reasonably have worked, and determined that the maximum Plaintiff could be owed for overtime pay (<u>if</u> Plaintiff was found to be a non-exempt employee) is $1,250, calculated by multiplying 10 weeks times an average of no more than 10 overtime hours per week times $12.50 (his half-time rate). Defendant further contends that it acted in good faith, and as a result, there is a strong argument that liquidated damages are not available in this case and that all Plaintiff would be entitled to recover would be limited to $1,250. If liquidated damages were awarded, the total would not exceed $2,500. In this settlement, Defendant has agreed to pay Plaintiff twice that amount ($5,000) as well as all of Plaintiff's attorneys' fees ($8,000). As such, the settlement payment more than compensates Plaintiff for any unpaid overtime he could arguably claim he was entitled to.

D. Counsel for the Parties have also executed, for Court approval, a joint stipulation for the entry of an Agreed Order of Dismissal With Prejudice (the "Joint Stipulation"); and

E. In consideration of the promises that are contained in this Agreement, the Joint Stipulation, and other good and valuable consideration, receipt of which is hereby acknowledged by Ramirez, and to resolve all actual and potential issues between the Parties, including but not limited to those related to Ramirez's Lawsuit and employment with Defendant, and any potential claims Defendant may have against Ramirez, the Parties agree to the terms of this Agreement.

2. **Plaintiff's Release of Defendant.** Ramirez, on his own behalf and on behalf of his descendants, dependents, heirs, executors, administrators, assigns and successors ("Releasors"), covenants not to sue, and releases, absolves and discharges Defendant, and each

2

of Defendant's past and present parent companies or entities and ultimate beneficial owners of the Defendant, sister corporations, subsidiaries, divisions, affiliates, predecessors, successors, affiliated and constituent partnerships and corporations, affiliates or related business entities and each of their insurers, representatives, officers, directors, shareholders, partners, agents, assigns, trustees, current and former principals, managers, employees, administrators, fiduciaries and attorneys, (collectively "Releasees") from any and all claims, demands, liens, agreements, contracts, covenants, actions, suits, causes of action, wages, obligations, debts, expenses, attorneys' fees, costs, damages, judgments, orders and liabilities including, but not limited to, that were or could have been raised in the Lawsuit, arising out of Ramirez's employment with Defendant and/or his separation from employment, based in law, equity or otherwise, known or unknown, suspected or unsuspected, accrued or not yet accrued, which Ramirez now owns or holds, has at any time owned or held, or may in the future discover that he owned or held, against Releasees, or any of them, including, <u>but not limited to,</u> those which: (1) are alleged or set forth in the Lawsuit; (2) arise out of or are in any way connected with any transaction, occurrence, act or omission set forth or fact alleged in any charges, the Lawsuit, claims or pleadings filed by Ramirez against Releasees prior to this Agreement with any court, or any city, county, state or federal agency, commission, office or tribunal whatsoever; or (3) arise out of or are in any way connected with his employment or separation from employment occurring up to the date of this Agreement, including, <u>but not limited to</u>:

- all claims arising under:

    - Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* as amended;
    - Sections 1981 through 1988 of Title 42 of the United States Code, as amended, including, but not limited to 42 U.S.C. § 1981;
    - Civil Rights Act of 1991;
    - The Equal Pay Act of 1963, as amended, 29 U.S.C. § 206;
    - The Americans With Disabilities Act, ("ADA"), 42 U.S.C. § 12101, et seq.;
    - The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.;
    - The Older Workers' Benefit Protection Act ("OWBPA");
    - Sections 503 and 504 of the Rehabilitation Act of 1973;
    - The Family Medical Leave Act ("FMLA") 29 U.S.C. § 2601 et seq;
    - The Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 et seq.;

3

- The Sarbanes-Oxley Act of 2002 ("SOX");
- The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq (except for vested benefits which are not affected by this agreement);
- The Occupational Safety and Health Act ("OSHA");
- The National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq.; ("EPA");
- The Immigration Reform and Control Act, as amended;
- The Labor Management Relations Act of 1947, as amended;
- The Workers' Adjustment and Retraining Notification Act ("WARN Act");
- The Fair Credit Reporting Act ("FCRA");
- The Health Maintenance Organization Act of 1973
- The Florida Civil Rights Act as amended, Fla. Stat. § 760.01 et. seq. ("FCRA");
- The Florida Private Sector Whistleblower's Act, Florida. Stat. §§ 448.102-.105, including any claim for wrongful and retaliatory termination in violation of Fla. Stat. § 448.103;
- Florida Statute § 448.08 for unpaid wages;
- Florida's Wage Rates Provision, Section 448.07, Florida Statutes;
- The Florida Minimum Wage Law, as amended;
- The Florida Equal Pay Act, Section 725.07, Florida Statutes, as amended;
- Florida Statutory Provision Regarding Retaliation/Discrimination for Filing a Workers Compensation Claim – Fla. Stat. §440.205;
- Florida AIDS Act – Fla. Stat. §110.1125, §381.00 and §760.50;
- Florida Discrimination on the Basis of Sickle Cell Trait Law, Fla. Stat. §448.075 et seq.;
- Florida OSHA – Fla. Stat. Ann. §442.018(2);
- any state, civil or statutory laws, including any and all human rights laws and laws against discrimination and/or retaliation;
- any other federal, state or local fair employment or civil rights laws, statute, code or ordinance, common law, contract law, tort, including, but not limited to claims for whistle-blowing, denial or termination of any health benefit or benefits of any other kind; and

■ any claims for salary, overtime, liquidated damages, bonuses, severance pay, vacation pay;

■ any claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliation of any kind, retaliatory discharge, breach of contract, unequal pay, wage claims, including but not limited to claims for bonuses, severance, vacation and overtime, promissory estoppel,

4

fraud, fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct, interference with prospective business advantage, negligence, negligent misrepresentation or concealment, negligent hiring, negligent retention, wrongful or bad faith termination, defamation, libel, battery, assault, slander and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief;

- any other employment-related tort, and any other federal, state, or local law relating to employment, including any laws relating to "whistle blowers" or any claim similar to any of the foregoing; and

- rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, which Ramirez has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the Effective Date of this Agreement.

Without in any way limiting the foregoing provisions, this is a full and complete release of all claims, demands, and causes of action raised or that could have been raised by Ramirez against Defendant except any claims for unemployment compensation or worker's compensation benefits (with regard to which Defendant reserves all defenses). The Parties understand the word "claims" to include all actions, claims, and grievances (including related attorneys' fees and costs), whatsoever from the beginning of the world to the execution of this Agreement, whether actual or potential, known or unknown, accrued or not yet accrued, suspected or unsuspected, and specifically, but not exclusively, all claims arising out of Ramirez's employment with or separation from Defendant, without exception.

RAMIREZ REPRESENTS THAT, OTHER THAN AS PROVIDED ABOVE, HE KNOWS OF NO CLAIMS OR RIGHTS OR ANY KIND THAT HE HAS BUT THAT HAS NOT BEEN RELEASED BY THIS PARAGRAPH 2 AND ALL ITS SUBPARAGRAPHS OF THIS AGREEMENT. RAMIREZ UNDERSTANDS AND AGREES THAT THIS SETTLEMENT AGREEMENT AND RELEASE IS BINDING ON RAMIREZ AND ON ANYONE WHO SUCCEEDS TO HIS RIGHTS.

3.  **Ownership of Claims**: Ramirez represents and warrants that he has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant,

guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

4.  **Defendant's Release of Plaintiff:** For and in consideration of the required acts and promises set forth in the text of this Agreement, Defendant hereby knowingly and voluntarily releases and discharges Ramirez from any and all claims, demand, causes of action, complaints or charges, known or unknown, accrued or not yet accrued, suspected or not suspected, of any kind or character, in tort, in contract or under any law or statute whatsoever, which Defendant has or might have as a result of or in any way connected to Defendant's employment of Ramirez.

5.  **Voluntary Waiver.** Ramirez acknowledges that he is *voluntarily* waiving any rights and claims he may have against the Releasees in exchange for the payment made by Defendant as stated in paragraph 7 below.

6.  **No admission of Liability.** Neither the existence of, nor compliance with, this Agreement shall be construed as an admission by either party of any wrongdoing. Rather, each Party specifically disclaims any liability to the other for any alleged violation of the rights of the other or any person, or for any alleged violation of any order, law, statute, duty, or contract on the part of any Party, including but not limited to Defendant's employees or agents or related companies or their respective employees or agents.

7.  ~~Consideration.~~ In consideration for the promises made herein, including but not limited to the Parties' general releases as to the other, and in full and final settlement and in satisfaction of any and all claims Ramirez has or had against Defendant, Defendant will pay Thirteen Thousand Dollars ($13,000.00) ("Settlement Proceeds") as set forth herein. Payment of the Settlement Proceeds is in full settlement of any and all claims and monies Ramirez claims to be entitled to from the Defendant including, but not limited to, claims for unpaid wages, overtime, compensation of any kind, liquidated and compensatory damages, and/or attorneys' fees and costs. At the instruction of Ramirez, the Parties agree that payment of the Settlement Proceeds will be effected as follows:

   (a)   one check payable to Federico Ramirez in the amount of Two Thousand Five Hundred Dollars ($2,500.00), minus applicable taxes, consistent with the most recent W4 form Defendant has on file for Ramirez;

(b)     one check payable to Federico Ramirez for liquidated damages in the amount of Two Thousand Five Hundred Dollars ($2,500.00), for which Defendant shall issue an IRS Form 1099 to Ramirez in connection with this payment;

(c)     one check payable to "The Shavitz Law Group" in the amount of Eight Thousand Dollars ($8,000.00). At the appropriate time, Mar-A-Lago shall issue an IRS Form 1099 to Shavitz Law Group (whose EIN number is: # 65-0969405) in connection with this payment.

8. **Timing of Payment & Dismissal of Lawsuit.** Within ten (10) days of its receipt of the Settlement Agreement executed by Ramirez (so long as the 7-day rescission period referred to below expires without Plaintiff rescinding this Agreement), Defendant shall deliver the Settlement Proceeds as directed above to Defendant's counsel to be held in escrow. In no event is Defendant obligated to deliver Settlement Proceeds before the Effective Date of this Agreement. Upon electronic confirmation of Plaintiff's counsel filing of necessary documents to seek Court approval of the Agreement including but not limited to the Joint Stipulation of Voluntary Dismissal with Prejudice with a proposed agreed order for dismissal, Defendant's counsel shall hold the Settlement Proceeds in escrow until the Court enters an order approving this Settlement Agreement and dismissing this case with prejudice. Plaintiff's counsel shall not deposit any settlement checks or disburse any funds to itself or Plaintiff until this settlement is approved and this lawsuit is dismissed with prejudice.

9. **Sufficiency of Consideration.** The Settlement Proceeds exceed the value of Plaintiff's overtime claims; the excessive portions of the Settlement Proceeds and Defendant's promises herein, including but not limited to Defendant's general release in favor of Ramirez and its agreement to provide a neutral letter of reference are consideration for Ramirez's promises contained herein, including but not limited to Ramirez's general release in favor of Defendant. Ramirez agrees that the Settlement Proceeds are made in exchange for, and constitute good and valuable consideration for his execution of this Agreement, his waiver and release of claims, and his execution of the Joint Stipulation. Ramirez further agrees that the Settlement Proceeds shall constitute the entire amount of monetary consideration provided to him under this Agreement, that he is not entitled to any further consideration whatsoever from Defendant in exchange for this Agreement, including but not limited to any other claimed damages, costs, or attorneys' fees in connection with the matters encompassed in this Agreement, the Lawsuit, or any other events or circumstances that existed or occurred prior to his execution of this Agreement.

7

10. **Payment of Applicable Taxes.** Ramirez agrees that he shall be solely responsible for the payment of any federal, state and/or local income and/or employment taxes and any F.I.C.A. payments or other payments which may be required to be paid by Ramirez or Defendant on account of any portion of the Settlement Proceeds. Ramirez further covenants and agrees that he will hold harmless and indemnify the Releasees, in either their representative or individual capacities, against any tax assessments or other penalties which may be made against Defendant or any other enumerated individual or entity herein, with respect to any portion of the Settlement Proceeds. Ramirez agrees that any and all liability of any kind incurred by Releasees due to the payment of the Settlement Proceeds will be borne solely by the Ramirez.

11. **Dismissal.** After the Effective Date, and upon receipt of an executed Agreement and Joint Stipulation from Defendant, Ramirez, through his attorney, shall file a Joint Stipulation for Dismissal with Prejudice, in the form attached hereto as **Exhibit "A"** and a proposed Agreed Order of Dismissal With Prejudice attached hereto as **Exhibit "B."** The Parties agree that the Joint Stipulation and Settlement Agreement seek the dismissal, with prejudice of all matters raised in the Lawsuit.

12. **Effective Date.** This Agreement shall not become effective until the eighth (8th) day following Employee's signing and delivery to Defendant's Attorney of this Agreement (the "Effective Date"), and Employee may at any time prior to the Effective Date revoke this Agreement by giving notice in writing of such revocation to Defendant's Attorney, Steven L. Schwarzberg, Schwarzberg & Associates, P.A., 222 Lakeview Avenue, West Palm Beach, Florida 33401 via facsimile at (561) 659-1911. In the event that Employee revokes this Agreement prior to the eighth (8th) day after Employee's execution thereof and delivery to Defendant's Attorney, this Agreement, and the promises contained therein, shall automatically be deemed null and void and the Company will not be obligated to pay Employee the consideration promised in paragraph 7.

13. **Future Employment.** Ramirez understands and agrees that he is not eligible for reinstatement, re-hire, future employment, or any employment relationship with Defendant or any affiliated, related or associated companies, subsidiaries, parents, divisions, or affiliates of these entities. Ramirez agrees that he will neither seek nor accept any such employment relationships in the future, and that the Defendant, and any affiliated, related or associated companies, subsidiaries, parents, divisions, or affiliates of these entities, are entitled to reject

8

without cause any application for employment made by Ramirez. Ramirez further agrees that if he applies for a position with Defendant and is offered and accepts a position, the offer may be withdrawn or Ramirez may be terminated immediately, without notice, cause or recourse. Defendant will provide Ramirez with a neutral employment reference, i.e. confirmation of employment and dates of employment. Said letter will state:

> Ramirez was employed with Mar-A-Lago Club, L.L.C for two seasons: from September 22, 2008 through May 14, 2009 as the Head Bartender, and from September, 2009 – November 13, 2009 as Beverage Manager.

14. **Confidentiality Provision.** The Court may require this Agreement to be filed with the Court for the Court's approval of this Agreement. However, the Parties themselves agree, promise, and covenant that the terms and provisions of this Agreement shall remain and be kept strictly confidential and shall not be disclosed except as provided herein. Without the express written agreement from the other Party or unless required to do so by law, each Party agrees never to disclose the existence, facts, terms, or amounts of this Agreement or the Joint Stipulation nor the substance of the negotiations leading to either, to any person or entity, other than to his spouse, personal counsel or attorney, personal accountants, or personal tax preparer. Any such disclosure to such persons will be made only if the relevant person must have such information for the performance of his or her responsibilities. To the extent required by law or applicable regulation, each Party may also disclose the provisions of this Agreement to the appropriate taxing authorities. **This confidentiality provision applies to and expressly prohibits all communications to any person or entity including, without limitation, communications with any present, former, or future employee of Defendant. Each Party agrees that if questioned about this settlement, the disposition of Ramirez's claims, or any other information made confidential by this provision, each Party can only say: "The case was resolved." Furthermore, Defendant may discuss this Agreement with its managers for business purposes only but Defendant will instruct any managers to maintain the confidentiality of this Agreement.**

15. **Non-disparagement.** Ramirez agrees that he will not disparage or criticize Defendant including, but not limited to, its respective management philosophies, direction, or values in communications to any person, entity, or third party. Defendant agrees that it will

instruct its owners and managers to not disparage or criticize Ramirez to any person, entity or third party.

16. **Non-Incitement of Claims.** After the Effective Date of this Agreement, Ramirez agrees that he will not encourage or incite any person, including, but not limited to, other current or former employees of the Defendant to disparage, assert any complaint, claim or charge, or to initiate any legal proceeding against the Defendant. Ramirez acknowledges that any incitement of others to file such claims would constitute a material breach of this Agreement, and agrees that he will not do so. Nothing in this paragraph is intended to nor shall be construed to apply to any claim or rights under the ADEA.

17. **No Other Claims Pending:** Ramirez represents that he has not filed any lawsuits, claims, charges or actions against Defendant, its officers, agents, directors, supervisors, employees, or representatives with any state, federal, or local agency or court and that he will not do so, and will not ask or allow anyone to do so on his behalf, at any time hereafter regarding matters encompassed in this Agreement. This provision shall not apply, however, to any non-waivable charges or claims brought before any governmental agency. With respect to any such non-waivable claims, Ramirez agrees to waive his right (if any) to any monetary or other recovery should any governmental agency or other third party pursue any claims on Ramirez's behalf, either individually or as part of any collective action. Nothing in this paragraph is intended to nor shall be construed to apply to any claim or rights under the ADEA.

18. **Non-Interference.** Nothing in this Agreement shall interfere with Ramirez's right to file a charge, cooperate or participate in an investigation or proceeding conducted by any federal or state regulatory or law enforcement agency. However, the consideration provided to Ramirez in this Agreement shall be the sole relief provided to Ramirez for the claims that are released by Ramirez herein and Ramirez will not be entitled to recover and agrees to waive any monetary benefits or recovery against the Defendant in connection with any such claim, charge, or proceeding without regard to who has brought such complaint or charge. Nothing in this paragraph is intended to nor shall be construed to apply to any claim or rights under the ADEA.

19. **Voluntariness.** Ramirez represents that he has reviewed all aspects of this Agreement, that he has carefully read and fully understands all the provisions of this Agreement, that he understands that in agreeing to this document he is releasing Defendant from any and all claims he may have against Defendant, that he voluntarily agrees to all the terms set forth in this

Agreement, that he knowingly and willingly intends to be legally bound by the same, that he was given the opportunity to consider the terms of this Agreement and the Joint Stipulation and discuss them with his legal counsel and that their terms were determined through negotiation between counsel for Ramirez, acting as attorney in fact and law on behalf of Ramirez, and the attorneys for Defendant.

20. **No representation.** The Parties hereto represent and acknowledge that in executing this Agreement they do not rely and have not relied upon any representation or statement made by any of the Parties or by any of the Parties' agents, attorneys, or representatives with regard to the subject matter, basis, or effect of this Agreement or otherwise, other than those specifically stated in this written Agreement.

21. **Binding Effect.** This Agreement shall be binding upon the Parties hereto and upon their heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of said Parties and each of them and to their heirs, administrators, representatives, executors, successors, and assigns. Ramirez expressly warrants that he has not transferred to any person or entity any rights, causes of action, or claims released in this Agreement.

22. **Severable Provisions.** Should any provision of this Agreement be declared or be determined by any court of competent jurisdiction to be wholly or partially illegal, invalid, or unenforceable, the legality, validity, and enforceability of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal, unenforceable, or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

23. **Headings.** The headings contained in the Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement.

24. **Enforceable Agreement.** Should this Agreement be declared or determined by any court of competent jurisdiction to be wholly invalid or unenforceable, Ramirez agrees to immediately execute an enforceable agreement equal in the breadth and scope this Agreement. Nothing in this paragraph is intended to nor shall be construed to apply to any claim or rights under the ADEA.

25. **Integration.** This Agreement sets forth the entire agreement between the parties hereto and fully supersedes any and all prior agreements or understandings, written or oral,

between the parties hereto pertaining to the subject matter hereof, except that the Joint Stipulation and Settlement Agreement has been made a part of this Agreement by reference.

26. **Applicable Law.** This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against any of the parties hereto. This Agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of Florida without regard to principles of conflict of law.

27. **Jurisdiction.** The Parties agree that the United States District Court for the Southern District of Florida retains exclusive jurisdiction to enforce, interpret and/or construe any provision of this Agreement or if said court lacks subject matter jurisdiction, then in the courts of the State of Florida in and for Palm Beach County, Florida.

28. **Construction of Agreement.** Each Party has had the opportunity to cooperate in the drafting and preparation of the Agreement. Hence, in any construction to be made of the Agreement, the same shall not be construed against any Party on the basis that the Party was the drafter.

29. **Signatures.** The Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original. Photographic, faxed or scanned copies of such signed counterparts may be used in lieu of the originals for any purpose.

30. **Execution of Necessary Documents.** Each Party shall, upon the request of the other, execute and re-execute, acknowledge and deliver this Agreement and any and all papers or documents or other instruments, as may be reasonably necessary to implement the terms hereof with any formalities as may be required and, otherwise, shall cooperate to fulfill the terms hereof and enable the other Party to effectuate any of the provisions of this Agreement.

31. **Attorneys' Fees.** In the event of litigation in connection with or concerning the subject matters of the Agreement, the prevailing party shall be entitled to recover all costs and expenses incurred by such party in connection with the litigation, including reasonable attorneys' fees.

32. **Breach.** Ramirez acknowledges that if he materially breaches or anticipatorily commits a material breach of this Agreement, and/or commences a suit or action or complaint in contravention of this release and waiver of claims, the Defendant's obligations to pay the monies and/or provide the benefits referred to above shall immediately cease. Ramirez agrees that all Settlement Proceeds paid by the Defendant shall be immediately returned. The Defendant shall

be entitled to pursue all other remedies allowed in law or equity, including but not limited to the return of any payments made to Ramirez under this Agreement. Nothing in this paragraph is intended to nor shall be construed to apply to any claim or rights under the ADEA.

33. **No Waiver/All Rights Are Cumulative.** No waiver of any breach of any term or provision of the Agreement shall be construed to be, nor shall be deemed, a waiver of any other breach of the Agreement. No waiver shall be binding unless it is made in writing and signed by the party waiving the breach. All rights are cumulative.

34. **Waiver of right to jury trial and appeal.** The Parties waive:

    (a)   the right to a trial by jury; and

    (b)   the right to appeal any trial court decision,

in any lawsuit in any way related to this Agreement, including, but not limited to its creation, validity, interpretation, or enforcement.

35. **Employee's Acknowledgment.** Ramirez acknowledges that the terms of this Agreement are contractual and not a mere recital, and that no representation, promise or inducement has been made other than as set forth in this Agreement, and that Ramirez enters into this Agreement without reliance upon any other representation, promise or inducement not set forth herein. Ramirez further acknowledges and represents that he assumes the risk for any mistake of fact now known or unknown, and that he understands and acknowledges the significance and consequences of this Agreement and represents that its terms are fully understood and voluntarily accepted.

Ramirez also acknowledges that: (a) he has been afforded the opportunity to consider the terms of this Agreement and incorporated general release for a period of twenty-one (21) days prior his execution of this Agreement; (b) he has consulted with an attorney of his choosing concerning this Agreement or has been given the opportunity to consult with an attorney but chose not to do so; and (c) he has read and understands this Agreement, is fully aware of its legal effect, and has entered into it freely and voluntarily based on the Employee's own judgment and/or the Employee's attorney's advice. Ramirez acknowledges that he has been given a reasonable time to consider the terms of this Agreement.

36. <u>Employer's Acknowledgment.</u> Employer represents that this Agreement is duly authorized; that the signatory below has full authority to bind the Employer to this Agreement; and that the Employer intends to be so bound as a lawful act of the Employer.

BY YOUR SIGNATURE, YOU AGREE TO THE TERMS SET FORTH ABOVE.

YOU, THE EMPLOYEE, REPRESENT AND WARRANT THAT YOU HAVE READ THIS AGREEMENT IN ITS ENTIRETY, HAVE BEEN OFFERED A PERIOD OF TWENTY-ONE (21) DAYS TO REVIEW THE AGREEMENT AND INCORPORATED GENERAL RELEASE, HAVE BEEN ADVISED TO CONSULT WITH COUNSEL, FULLY UNDERSTANDS ALL OF ITS TERMS, AND VOLUNTARILY ASSENTS TO ALL TERMS AND CONDITIONS HEREIN.

02/16/2010
Date

_[signature]_
FEDERICO RAMIREZ

_____
Date

MAR-A-LAGO CLUB, L.L.C.
By _____
Its _____

14

36. **Employer's Acknowledgment.** Employer represents that this Agreement is duly authorized; that the signatory below has full authority to bind the Employer to this Agreement; and that the Employer intends to be so bound as a lawful act of the Employer.

BY YOUR SIGNATURE, YOU AGREE TO THE TERMS SET FORTH ABOVE.

**YOU, THE EMPLOYEE, REPRESENT AND WARRANT THAT YOU HAVE READ THIS AGREEMENT IN ITS ENTIRETY, HAVE BEEN OFFERED A PERIOD OF TWENTY-ONE (21) DAYS TO REVIEW THE AGREEMENT AND INCORPORATED GENERAL RELEASE, HAVE BEEN ADVISED TO CONSULT WITH COUNSEL, FULLY UNDERSTANDS ALL OF ITS TERMS, AND VOLUNTARILY ASSENTS TO ALL TERMS AND CONDITIONS HEREIN.**

_____  
Date

_____  
FEDERICO RAMIREZ

2/11/2010  
Date

MAR-A-LAGO CLUB, L.L.C.  
By _Bernd Lembcke_  
Its _Managing Director/Executive Vice-Pres._

14